Testing 1, 2, 3. Good morning. Before we get started, let me assure counsel that we have read the briefs in each of the cases and are familiar with the cases. So please do not use up your time giving us the facts of the case. We are conversant with the facts and go directly to pressing on us the legal issues that you would like us to attend to. To the extent that anybody may be unfamiliar with our lighting system, when the yellow light goes on, you are beginning to consume your rebuttal time and when the red light goes on, your time is expired. Very well, let's start with number 051296 NSK LTD v. United States. Good morning. May it please the Court. Commerce's use of an adverse inference with respect to NTN's freight allocation methodology is simply a punitive measure because NTN did not have the requested data and because NTN fully cooperated by acting to the best of its ability. A prerequisite to Commerce's application of an adverse inference is a respondent's failure to cooperate to the best of its ability and not, as this Court has stated, a respondent's failure to provide the requested information. Ms. McDonald, what is the difference between the 10th review period and the 11th review period and the 12th review period? Why is your period of review different from the other two? We believe it's different because NTN kept providing additional information and backup documentation to Commerce to demonstrate that it does not have this data. The alternative allocation methodology was reasonable. But Commerce rejected it in the previous two periods. Why do you think the third period would be déjà vu? Well, there are some different factual information. There's some different factual information in this case, which we believe, again, represents NTN's argument or supports NTN's argument that the freight information and its allocation methodology is wrong. And what was the difference? Well, Commerce has alleged that NTN withheld data because there was freight weight information in NTN's catalogs. And while that is the case, NTN did supply catalogs and there is weight information in these catalogs. We believe, and we have argued in our briefs, that this information is not helpful in assessing, in determining an allocation methodology. Wasn't that same fact at issue in the earlier reviews? I do not believe it was. The fact that there's weight information in the catalogs? I do not believe it was a factor in Commerce's decision in the earlier reviews. Were the catalogs submitted in the earlier reviews? I think the catalogs were submitted, yes. But Commerce did not make this fact a determining factor in its determination. So you submitted weight factors during the first two review periods? Well, we submitted catalogs that contained weight information. But while the government makes much of this fact, NTN's catalogs do not contain weight data for certain bearings. And they do contain weight bearing data for certain bearings when we supplied this. However, these catalogs, these standard bearings that are manufactured by NTN, many of the bearings that are subject to this review are customized bearings made to customer specifications, obviously. And they are not the standard off-the-shelf bearings. So the catalogs provide a starting point for a customer when it purchases bearings. But any deviation from that standard, such as the addition of a seal or a shield or any other modification, can and usually does change the weight of the bearings. In addition, these catalogs provide standard bearings and their weights. But many of the bearings manufactured by NTN and the accessories are not standard. They're customized. They're not found in the catalogs because they're made for one customer. So in order to do a weight allocation, we would need to know the total of all of the bearings sold by NTN. And many, many of these are not found in the catalogs. So the catalogs are not helpful, and it is not a case that NTN withheld this information. We provided what information that we did have regarding the weights. I would think after your 10th review period, after your 11th review period, at the 12th review period, you'd have the information that would be necessary. At least you would try to keep it the way Congress would want you to have it so that you could submit it. Was that done or not? I understand that reasoning, but I believe the Court should understand that this is a very large bearing company. There are many thousands of bearings that are shipped every day. And NTN does not need this information for its business records. It's an enormous task to simply codify in a manner required by Congress, simply for the purpose of this dumping review, the weights of all of these many, many bearings and other items that NTN manufactures and ships every day. And all of this information is needed in order to come up with the allocation because this is the denominator of an allocation methodology. So while it is logical to conclude that someone might have simply provided the weight after several reviews, it's important to understand that it's an enormous, enormous task that is simply not required in the day-to-day business of NTN. Well, now, this is a related question, but at JA 174, if you have your joint appendix there, I don't expect you to have memorized it. At the top, there's a reference to the Congress's question asking for the weight of each bearing. And the response is, and I won't read the whole thing, but the effective summarized version of the response as I read it is, we don't use weight exclusively in calculating or determining freight expenses. And therefore, those numbers will not be provided. Now, Commerce was not asking the question that you answered, it seems to me. Commerce is saying, give us weight numbers. And you gave a different answer. You said, we don't really want to give you that or we're not going to give you that because we don't use it in expenses. That strikes me as not just off the cuff, it strikes me as not doing your best to answer the question. You might have said in response, there's no way we can give you any of those, although the fact is some of the bearings at least seem to have weights in the catalogs. But we don't know, by the time we get to the end of that answer, exactly what you do have by way of weights. We just know that you don't think it's relevant and they, in effect, shouldn't be asking for them. Perhaps that was inartfully phrased, but I believe it was probably the result of trying to answer the question in a number of different ways, in a number of different places. And perhaps we understood that Commerce wanted the weight information in order to do this allocation and we were simply trying to explain why we use an alternative allocation methodology based on sales value. Because in many, many cases, when we provided information, weight is not a factor in the charge, the NTN's charges from its shipping company to NTN for that shipment. For example, we indicated that there are several factors, including truck rental at a fixed price per month, overtime charges, toll fees, and certain surcharges and discounts that are unrelated to weight. So, while we perhaps could have phrased it better, I think if you look at the response in total, there are a number of different places where we discuss weight and why we were not able to allocate it on the basis of weight and why we use the alternative allocation methodology as invited to do by Commerce for those respondents who are unable to use, to allocate their freight information on the basis of which they were charged. So, we thought that this was, I think if you look at the totality of the response as a whole, you'll realize that we were trying to simply make the point in several different ways. I understand. Now, let me ask this. Judge Garis asked about the past reviews. And you say there are some differences in the responses. You've mentioned the catalogs, or at least the, you say the catalogs were provided before, but a different argument was made with respect to the catalogs in this review? Yes, I believe that Commerce did not allege that NTN withheld this information from them because it was in the catalogs. But previously, Commerce had had the catalogs, but had still alleged that the weight information had been withheld? No, I do not believe that they alleged that the weight information, which would have been useful because it was in the catalogs, was withheld by NTN. But Commerce has had the catalogs. NTN has provided Commerce with catalogs and probably a ton of information, a literal ton, for the past 30 years. They have been involved in dumping reviews. So, they have provided many, many catalogs, including these. But I do not believe that Commerce alleged that this was a withholding of certain information. For example, NTN had this information, so you could have provided it. And our explanation and argument is that we did provide what we had to do. It is not helpful, we believe, in allocating the freight charges because many, many, many products subject to the dumping order are not in the catalogs. And many products that NTN makes are not in the catalogs at all. They are either customized or accessories, and NTN also has many, many catalogs. So, this information, Commerce alleged this information is a withholding of data, a refusal to provide. And we would just like to note that it was not, we provided the data that we had, but it still is not helpful in determining an allocation methodology. So, I will reserve the rest of my time. Very well. We will save your time for you. Now, we have Mr. Deprest and Ms. Burke. Ms. Burke, are you going to go first, and you're taking 10 minutes, is that right? That's correct. And Mr. Deprest in five. All right, we'll keep your time separately so we don't have a problem of chewing up Mr. Deprest's time. Thank you, Your Honor. Your Honor, may it please the Court, Commerce's determination to apply adverse facts available and facts available is supported by substantial evidence and in accordance with law. This is the fourth time that we have been addressing this particular situation. As the Court pointed out, the 10th and the 11th reviews, this review, and also the 13th review. And in each instance, NTN has been requested to provide an allocation based upon... But this is only the 12th review, though, that's before us. That's correct, Your Honor. There is a 13th, I take it, which is in train? Actually, this Court has already heard... Oh, was that the 13th? I thought that was the one that was decided in December. That's correct. That was the 13th, so we're... No, no, I'm sorry, that was the 11th. I apologize. The 13th was decided about a year ago, and I can't explain why they go out of order. So it's totally out of phase, then. Is there a 14th on its way to us? Yes, Your Honor, and a 15th and a 16th. They're all pending at one stage or another? Yes. The gift that keeps on giving. Do we have... To the extent that you know, has there been a change in either the Commerce's position or the Company's position with respect to information provided and so forth in some of the upcoming reviews? Or are we basically having similar cases into the next three reviews, as far as you know? I believe that it's an issue in the 14th review. I don't know about the 15th and the 16th because the briefing hasn't been completed at the Court of International Trade. I guess it's outside of the scope of this appeal, anyway. Given the difficulty of providing this weight information, why has Commerce decided to press on and continue to request that information as opposed to some other basis to conclude the freight costs? Well, I think it's important to go back to what Commerce actually requests of the respondents. And that request comes from, obviously, the questionnaire and also the regulation. Commerce wants expenses reported on the basis on which they were incurred. Because, obviously, that's the most specific way to get the information. If a respondent can't do that, Commerce wants an allocation on at least one basis on which the expense was incurred, and it prefers weight. It's important to point out that not only did MTN fail to demonstrate why it couldn't use weight, but it failed to demonstrate why it couldn't use any of the other bases that it notes in its brief. And my opposing counsel listed other bases upon which MTN incurs its freight costs, like distance, shift, or size of the container. These are all bases upon which the expense is incurred. And MTN didn't explain why it couldn't use any of those. And that is one thing that Commerce requires of it. And now getting back to weight. Obviously, weight is logically the most important factor. Why would sales price be the most important factor? Well, an allocation inherently is a little bit arbitrary, because you're acknowledging that you can't report the actual expense. So you're taking a big, for example, shipment of things. It doesn't necessarily include bearings. Trying to figure out, based upon how much that freight shipment costs, how to figure out how much the actual bearings cost. And assuming that that shipment contains both bearings and something else, if that other merchandise is much more expensive than the bearings, then the allocation is going to be distorted, because the bearings are going to have a different price per unit than it would if it were based upon something like weight, which is much more obviously tied to the cost of the freight. And I think it's important to note that if MTN wants Commerce to understand and accept a price allocation, it needs to demonstrate that there's some relationship between the price allocation and the cost of the freight. The regulation requires that the respondent demonstrate to the Secretary of Satisfaction that the allocation is based on as specific a basis as possible. And MTN didn't put any evidence on the record as to why price was a reasonable way to go. All it said is that price is the only consistent factor. But consistency really has nothing to do with it. Well, does the price include the shipping cost in most cases? Or is it exclusive of shipping cost? Well, the price probably does include the shipping cost, but the way that Commerce deals with all that information is to break it out. But, yeah, I mean, you're correct. Well, how do you break it out, then, if it's included? If it's all one price? Delivery price to New York from Sweden is $100. And $100 includes shipping. How do you break that out? Well, exactly. That's why we need a very specific allocation basis. Is that done by weight? Is that done by distance? Are you asking about the freight cost specifically? It's done how MTN chooses to do it, and it's done in a way that Commerce has to be satisfied with. In other words, if you use something like price, there's obviously a lot of other factors. Profit is included in price. Profit doesn't have anything to do with the freight costs. Well, it depends on whether or not it's FOB or CIF or otherwise, doesn't it? It really depends on the shipping of the particular material. What is the trade general practice? Do we know that? I don't know that, Your Honor. I know that Commerce prefers that the allocation be done on the basis of weight because Commerce believes that it is most normally and usually tied to the freight costs. And it's not really a matter of Commerce deciding that price could never be a proper allocation. It's a matter of MTN properly responding to the information that's requested of it. MTN is supposed to demonstrate not why weight... They're supposed to demonstrate why they can't use weight, obviously. But they're also supposed to demonstrate why price is not distorted. And that's extremely important. They're supposed to demonstrate it to the Secretary's satisfaction. And if you look at the way that MTN has responded to those questions, it has really only given summary, conclusory explanations. So they don't want a weighted price, then? I'm sorry? They don't want a weighted price. That's correct. So as I understand your position, then Commerce is not unreasonably insisting that weight can be the only surrogate for actual freight costs incurred, but that in the absence of any explanation from MTN as to why sales value, sales price is an appropriate surrogate, their response is incomplete.  They're not insisting on weight that you would accept any other surrogate if a reasonable explanation was forthcoming and the reasonable explanation is absent here. That's correct, Your Honor. Based upon the language in the questionnaire, Commerce is willing to accept another allocation method other than weight so long as it's demonstrated that it is as specific as possible and not distorted. And Commerce did not explain that sufficiently. So we can get into it. For these reasons and the reasons stated in our brief, we respectfully request that the Court sustain Commerce's determination. Very well. Thank you. May it please the Court. I would just like to address a few of the questions. Regarding why it is that Commerce insists on asking that the freight expenses be allocated on the basis of something else than price. Well, on this record, MTN submitted a lot of information on how exactly it was charged for its freight expenses. And what these data indicate is that it is charged based on a number of things. It can be based on the weight of the merchandise or how far it travels or what the means is by which the merchandise travels. So it incurs the cost on a number of bases. Price is not one of these bases. Nowhere does MTN make even the barest allegation that there are invoices that it gets from freighting companies that charge it according to how much the bearing costs. Now I can guess that if we didn't deal with a product that is as cheap and as common as bearings, if we dealt with gemstones or artwork, maybe the price of the gemstone or the price of the artwork would be a factor in what you get charged for freight. But these are cheap, commodity products that get shipped all the time. What is the standard procedure for shipping costs? Is that FOB or is it CIO? The prices, it depends on the respondent. Obviously if the price did not include, if the customer paid for the freight, there wouldn't be a reduction for the freight costs. So we are talking about prices which, as reported in the sales response, included shipping. And so then there had to be a reduction. Is that a standard procedure in the industry? Well, I'm not an industry expert. I can only say what I see in the questionnaire response. And that seems to be the case for many respondents. There are exceptions. There are respondents, for example, who have divided their sales that they report in a number of different classes. And they report for these sales that the price of freight was included for some other group of sales that was not included, depending on the kind of customer and other factors. But there are respondents where, in fact, the price is not included, yes. So is it universal? No. Is it common? Yes. I also would like to address the issue about the different reviews and differences in the record. I would like to refer to the discussion that the Court had in Nippon Steel. In Nippon Steel, the Court said that when we look at an issue like this, Congress really makes a very subjective determination, because it has to make a determination based on the evidence that it has before it, whether the respondent did the best that he could. The maximum he could do, I think, is the words that the Court used. Well, to make that subjective determination, Congress obviously relies on the evidence that is before it in this particular record. But you should also keep in mind that Congress is about as familiar with this respondent as it is with any possible respondent. NTN, this is the draft administrative review, and this is just in ball bearings. NTN has also responded in the taper-throw bearing cases. NTN has been the subject of verifications and Congress visits for 20 years and more. So Congress is about as familiar with this respondent as it would be with any respondent. And I wanted to point that out, because it is important in the level of defense that it should afford to the Commerce Department in the exercise of its investigative duties and its appreciation and its decision as to whether this particular respondent for this particular issue has done the best he could. When you say the best that they could, and I understand that language along that line is the regulatory, presumably there's an element of reasonableness, I would think, in that. I mean, sure, you could use the entire profit margin of the company to create nothing but responses for commerce, but I don't think that, well, you tell me. I mean, is there in commerce's use of that standard typically a reasonableness test, or do you think not? Well, there is a reasonableness test in the sense that you measure it against the circumstances, as is explained in the Nippon's theory, you measure it against the circumstances of the case and the record, which includes, for example, the fact that other respondents are able to respond or allocate their total paid costs to the individual transactions based on weight. Let me ask the question this way. Suppose I am a respondent and I come back and I say to commerce, we could come up with these figures conceivably, but it would be inordinately burdensome to do that. Is that an answer that commerce will accept as constituting best effort on the part of the respondent if commerce is persuaded that, in fact, it would be quite expensive? Well, that would be the key issue. Would they be persuaded? They would have to evaluate that assertion as they did with the assertions of ending end here and figure out whether that is, in fact, believable. Right, but the question, I guess, is what I don't see in commerce's response, in their response to the arguments in their statement of the position is an acknowledgment of the fact that when one pleads, as is pleaded here, that there just isn't an easy way to accumulate certain records. There doesn't seem to be an express acknowledgment on the part of commerce that, well, if it really is terribly burdensome to do this, we will cut you some slack in the vernacular. They seem to be saying you could do it and therefore you failed to satisfy the standard. Is that, in fact, the standard that commerce is using in your experience or is it a more relaxed standard? Well, commerce does not, I suppose, have in there an explanation of what, it seems like you are addressing perhaps a hypothetical. I mean, the best that you could do is to take the evidence that is before it and discuss the evidence that is before it. Now, if you are saying that there is other evidence that they could have pointed to that supports what they determined, that is probably true. But, as this court has often held, it is not an obligation of an agency to point out all of the record evidence that is supportive of the determination that it makes. It would make the explanations very lengthy. Also, commerce does not engage in hypothetical explanations that would, for example, explore as to in what circumstances they would forgive the non-reporting, so to speak, or in what circumstances they would permit reporting that deviates. Very well. Ms. MacDonald, you have the floor. First, I think it is important to emphasize what Mr. DePrest just said. NTN has been the subject of anti-dumping duty cases for about 30 years, going back into the 1970s. It has provided millions and millions and millions of pieces of data to commerce over the years. It has been verified many, many times, both in Japan and in the U.S. It is probably true that commerce knows more about NTN than maybe any other company in these varying reviews. It is an open book to commerce. This is not an uncooperative respondent. And I think that commerce has not acknowledged this. This is not a case of careless record-keeping. This is not a case of inattentiveness. And as Nippon Steel says, if a respondent is simply unable to provide this data, it should not be penalized by this adverse inference. But I would think by now, after 30 years, that NTN probably would be keeping records the way commerce would expect them to be provided. Wouldn't that be a logical pursuit on their part? Well, it might also be logical to assume that the commerce department requests the same data in the same way every year for the last 30 years. But that is not the case at all. When did they change? I'm sorry, go ahead. For the past three or four review periods, it's always been the weight factor that they've been requesting. Yes, but commerce accepted NTN's allocation methodology, not using weight for 10 reviews before that. So NTN had some reasonable basis, we believe, to contend that this had been reasonable for commerce, and then all of a sudden it wasn't. But those earlier reviews, NTN was not given an opportunity to explain why providing weight would not be, why they're not able to provide the weight information. And it was only after commerce provided that opportunity and received what they perceived to be incomplete responses did they take an alternative position. Well, first, I think it's also important to note that there are many, many bases on which these thousands of sales incur freight charges. Commerce seems to think that there was a common basis somewhere, and there isn't, and NTN explained this over and over again. If there is a charge on a flat truck rental, a company could ship one bearing in that truck or it could fill the truck. And that is not a common feature to all of the freight transactions. There was no one common basis on which we could allocate them. And NTN never alleged that price was one of the bases on which freight was incurred. But commerce specifically stated in the questionnaire and in its supplemental questionnaire, if a respondent could not allocate the freight charges on one of the bases on which it was incurred, the respondent could use an alternative methodology. We simply took up commerce's invitation to use this alternative methodology because it fit NTN's data the best. There was no common element that we could see to use to allocate this information. And I believe that NTN did, it's a difficult proposition, but NTN did its best to explain why the value-based allocation was not distortive. It provided all kinds of information that showed that there was no other really applicable bases. Value could be verified. And in general, value-based allocation was reasonable, is as reasonable as a weight-based allocation because larger bearings are more costly than smaller bearings. Even commerce has admitted that there would be some distortion using a weight-based allocation. An allocation, I think as government said, is an estimate by its very nature. We believe that this NTN's estimate and its allocation is reasonable given the data that NTN possessed. And again, this is not a case of inattentiveness or carelessness or refusal to provide data. I think NTN has demonstrated that it has provided data to commerce and has opened its books to commerce for 30 years. Very well. Thank you. Thank you, Mr. O'Donnell. Thanks to all counsel. The case is submitted.